IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JONATHAN D. COOPER**                                                          **PETITIONER**

**v.**                                               **No. 4:16CV195-DMB-JMV**

**TIMOTHY MORRIS, ET AL.**                                       **RESPONDENTS**

**REPORT AND RECOMMENDATION *DENYING* PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION, *DISMISSING* PETITION FOR WRIT OF *HABEAS CORPUS***

This matter comes before the court on the petitioner's motion for a temporary restraining order or, in the alternative, for a preliminary injunction. The petitioner is a former Mississippi Department of Corrections inmate currently released on parole. The petitioner seeks an order from the court requiring the State to release him from custody. For the reasons set forth below, the instant motion will be denied.

**Preliminary Injunctions**

Both temporary restraining orders and preliminary injunctions are governed by Fed. R. Civ. P. 65. Though the same criteria govern the issuance of preliminary injunctions and temporary restraining orders, the purpose and form of relief differ for each. *The purpose of a preliminary injunction is to preserve the status quo during the course of litigation until the court can hold a trial on the matter.* Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 65, Practice Commentary; *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). *When adjudicating a preliminary injunction, the court must provide notice to all parties and give them a chance to be heard.* Fed. R. Civ. P. 65(a)(1). Once issued, a preliminary injunction stays in effect until the court grants final relief or otherwise modifies the order. Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and

Commentary Rule 65, Practice Commentary. Once the court issues final relief, the preliminary injunction dissolves, as the court need no longer rely on its equitable powers to provide interim relief. 11A, Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2947 (3d ed.); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). A ruling on a preliminary injunction is immediately appealable:

> [T]he courts of appeals shall have jurisdiction over appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions . . . .

28 U.S.C.A. § 1292(a)(1).

### Temporary Restraining Orders

Similarly, the purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm, *but only until the court can hold an adversarial hearing for a preliminary injunction*. Fed. R. Civ. P. 65(b)(3), *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-439, 94 S.Ct. 1113 (1974). Thus, a temporary restraining order may be granted *ex parte*, but it only lasts for 14 days (28 days if the court permits, with a showing of good cause). Fed. R. Civ. P. 65(b)(2). *Ex parte* temporary restraining orders are disfavored, and courts seldom grant them. Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 65, Practice Commentary. Once the court rules on a motion for preliminary injunction, then the temporary restraining order has served its purpose and should be dissolved. *Granny Goose*, 415 U.S. at 443. Neither party may appeal a district court's ruling on a temporary restraining order, as it has an extremely limited duration. *Chicago United Industries, Ltd. V. City of Chicago*, 445 F.3d 940, 943 (7th Cir. 2006). However, once the district court rules on a motion for preliminary injunction regarding the issue, the parties may appeal *that* order. *Northeast Ohio Coalition for Homeless*

*Service Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006).

## Elements of Temporary Restraining Order or Preliminary Injunctive Relief

A party must prove four elements to be entitled to preliminary injunctive relief or a temporary restraining order: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not disserve the public interest. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1058, 134 L. Ed. 2d 202 (1996); *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994); *Doe v. Duncanville Independent School District*, 994 F.2d 160, 163 (5th Cir. 1993); *Plains Cotton Co-op Association v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir.), *cert. denied*, 484 U.S. 821, 108 S. Ct. 80, 98 L. Ed. 2d 42 (1987); *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Preliminary injunctions and temporary restraining orders are extraordinary remedies, *Cherokee Pump*, 38 F.3d at 249, "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion." *Black Fire Fighters Association v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland American Insurance Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *Cherokee Pump*, 38 F.3d at 249 (quoting *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule"). Under Fed. R. Civ. P. 65, the party seeking a preliminary injunction or temporary restraining order must give security in an amount the court deems proper (which can be zero in some circumstances).

**Notice to Adverse Parties**

As an initial matter, the petitioner has not provided notice to the adverse parties, as required before the court may order preliminary injunctive relief. The instant motion should be denied for this reason alone. Fed. R. Civ. P. 65(a)(1), *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 130 (5th Cir.1990). Second, the petitioner is also unable to demonstrate a substantial likelihood of success on the merits in light of his argument in the instant motion.

**No Substantial Likelihood of Success on the Merits**

Mr. Cooper makes two basic arguments on the merits of his claims. First, he argues that the State missed several deadlines during his parole revocation proceedings and that his parole thus should not have been revoked. Second, he argues that the State has not properly calculated his release date after revoking his Earned Release Supervision. Neither of these arguments has merit. The court will assume, without deciding, that the State missed procedural deadlines during the revocation process. Cooper was placed on ERS on July 29, 2014. He was then arrested in Texas for possession of counterfeit currency and possession of a controlled substance on January 29, 2016, and because he had absconded from his area of supervision without the consent of his agent. Cooper was returned to Mississippi Department of Corrections custody, and the hearing on revocation of Earned Release Supervision took place on March 21, 2016, less than 60 days after his arrest in another state. The hearing officer found Cooper guilty of violating the terms of his supervised release; as punishment, Cooper's supervised release was revoked, he was reclassified, and he was reincarcerated.

**Due Process in the ERS Revocation Proceeding**

A revocation procedure must provide (1) written notice of the violations charged, (2)

disclosure to the parolee of the evidence against him, (3) the opportunity to be heard in person and to present witnesses and documentary evidence, (4) the right to confront and cross-examine adverse witnesses unless the hearing officer finds good cause for disallowing such confrontation, (5) a neutral and detached hearing body, and (6) a written statement by the factfinders identifying the evidence and reasons supporting the revocation decision. *Williams v. Johnson*, 171 F.3d 300, 304 (5th Cir. 1999) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972)).

There is no Sixth Amendment right of self-representation in parole revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), *United States v. Ramirez-Perez*, 132 Fed. Appx. 558 (5th Cir. 2005), 59 Am. Jur. 2d Pardon and Parole § 137. Generally, the right of a parolee to be represented by counsel at a parole revocation hearing may be required under a state constitution or statute, but is not required under the United States Constitution. *Gagnon*, 411 U.S. at 788-789. However, an indigent parolee may be entitled to appointed counsel where securing the rights guaranteed by *Morrissey* depends on the use of skills that the parolee does not possess – and where only a trained advocate could fairly present the parolee's version of events to the tribunal. *Id.* A tribunal must decide whether counsel is required on a case-by-case basis. *Id.*

In this case, Mr. Cooper was afforded all the process due him under the holding in *Morrissey*. He objects to the adequacy of the proceedings only because the State missed one or more deadlines in the administration of the revocation allegation. The deadlines involved in the processing of a Mississippi Department of Corrections Rule Violation Report are matters of state law only and thus fail to state a claim upon which *habeas corpus* relief could be granted.

**Award of Credit for Time Served on ERS Toward Cooper's Sentence**

Mr. Cooper also argues that MDOC has miscalculated his release date by failing to credit him with 18 months of time he spent on ERS toward his sentence. He is mistaken. Earned Release Supervision is a program which permits a qualifying inmate, through good conduct, to reduce his sentence. Miss. Code. Ann. § 47-5-138. On the other hand, an inmate who is on Trusty status may gain 30 days of credit toward his sentence for each 30-day period he stays on Trusty status. Miss. Code Ann. § 47-5-138.1. The time accumulated in this way is called "Trusty Earned Time" on a Sentence Computation Record. A prisoner may also forfeit such Trust Earned Time by violating prison rules or filing frivolous lawsuits. *Id*. The Earned Release Supervision program and the Trusty Earned Time program are distinct and offer two different types of supervised release.

Earned Release Supervision differs from other forms of parole, probation, and supervised release in that it is entirely within the purview of the Mississippi Department of Corrections, and it is simply a different classification of confinement. *Sobrado v. State*, 168 So. 3d 1114, 1118 – 1119 (Miss. Ct. App. 2014). Mississippi courts have no jurisdiction over the administration of the Earned Release Supervision program. *Id*. Time served in the community on Earned Release Supervision counts towards a prisoner's sentence as time served while incarcerated. Thus, even if the MDOC revokes ERS, that time counts toward completion of the inmate's sentence:

> If the earned-release supervision is revoked, the inmate shall serve the remainder of the sentence, but the time the inmate served on earned-release supervision before revocation, shall be applied to reduce his sentence.

Miss. Code. Ann. § 47-5-138(7).

Other forms of supervised release – including Trusty Earned Time – do not operate that way; instead, time under those forms counts toward completion of the inmate's sentence only if he

- 6 -

completes the supervised release period without violating its terms. *Sobrado*, 168 So.3d at 118-119. For example, if an inmate serving a five-year period of supervised release violates the terms of release after three years, then he may be reincarcerated for the full five years – and lose the three years that would otherwise have counted toward his sentence.

Cooper has provided a copy of his Sentence Computation Record dated March 18, 2016, and it reflects that he has been given proper credit for the time in question. Once he was convicted for manslaughter, Mr. Cooper's maximum sentence became December 12, 2022, and that has not changed since August 28, 2003. Cooper's *tentative* release date was the same at the beginning – December 12, 2022 – however, starting in 2006, he began accruing Trusty Earned Time in 30-day increments for each 30 days he remained on Trusty status. From that point, as reflected on Mr. Cooper's Sentence Computation Record, *his tentative release date was reduced by 30 days for each month on Trusty Status*. This is how MDOC credits inmates with Trusty Earned Time. Occasionally, Cooper would lose some of that earned time, either through violation of prison rules or by filing frivolous lawsuits, and those losses are also reflected in the records. Another entry reflects that Trusty Earned Time was returned to him when a prison Rule Violation Report was overturned on appeal.

On July 29, 2014, the date Mr. Cooper was released on ERS, his Tentative Release Date was September 9, 2017. That date reflects all of the Trusty Earned Time to which he was entitled. As Mr. Cooper was released on ERS on July 29, 2014, he was simultaneously *removed from Trusty Status*, as that is only available to inmates confined in an institution. Thus, he did not accrue Trusty Earned Time while on ERS. He remained on ERS (and off Trusty Status) for 18 months: July 29, 2014 through January 29, 2016, when he was returned from ERS to complete

- 7 -

his sentence. Throughout that time, Cooper's Tentative Release Date remained September 9, 2017 – which still reflects all of the Trusty Earned Time he had accrued. He did not receive any Trusty Earned Time while on ERS because he was no longer in Trusty Status during that time. On the other hand, as he was released on ERS (not Trusty Earned Time), revocation of that release did not *reduce* his Trusty Earned Time. Thus, Mr. Cooper's sentence has been computed correctly, and his argument to the contrary is unavailing.

## Release Renders Petition Moot

In any event, as Mr. Cooper has since been released from incarceration, the instant petition for a writ of *habeas corpus* should be dismissed as moot. *Lane v Williams*, 455 U.S. 624, 631 (1982).

For these reasons, petitioner has not demonstrated a substantial likelihood that he will prevail on his claim, and the instant motion for a temporary restraining order or preliminary injunction should be denied. In addition, as Mr. Cooper has been released from incarceration, the instant petition for a writ of *habeas corpus* should be dismissed as moot.

**SO ORDERED**, this, the 18th day of July, 2017.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE